UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HULLINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:20-CV-417-PPS-JEM |
| | ) | |
| WILLIAM FORGEY, MD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff, Christopher Hullinger, a former inmate of the Lake County Jail, filed

this section 1983 action against a number of defendants alleging they were deliberately

indifferent after he received serious eye injuries in a jail fight, and they failed to provide

him with adequate medical care. Specifically, the treating physician told Hullinger he

needed to have surgery within 7 days to prevent permanent damage to his eye, but

Hullinger never received the surgery.

There are three pending motions to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) before me: (1) Defendant Edward Davies (the Lake County Sheriff's

Department Jail Administrator) [DE 6]; (2) Unknown Officers of Lake County Jail [DE

13]; and (3) Defendant Dr. William Forgey (the medical director of the Lake County Jail)

[DE 20]. All three motions are related to a common nucleus of facts in this case.

Therefore, it is appropriate to address all of them in one opinion and order. Because

Hullinger has alleged deliberate indifference as to a continuing refusal to give him the

required eye surgery, the statute of limitations did not expire on his section 1983 claims

and the motions will be denied on timeliness grounds. Hullinger has conceded that the

official capacity claims and some other claims should be dismissed, and the claims

against the "unknown officers" will also be dismissed pursuant to Seventh Circuit

authority.  Therefore, as described more thoroughly below, the motions to dismiss will

be granted in part and denied in part.

## Background

Plaintiff, Christopher Hullinger, filed a complaint in the Lake Superior Court on

June 13, 2019.  There was a delay of service of process, and Dr. Forgey was not served

until about November 3, 2020.  [DE 1 at 2.]  On November 18, 2020, the lawsuit was

removed to this Court pursuant to 28 U.S.C. § 1441(c) and 1446(b). [DE 1.]  The

complaint contains 11 counts against numerous entities, alleging federal constitutional

violations under 42 U.S.C. § 1983 and supplemental state law claims.

The facts alleged in the complaint are straightforward but troubling.  On April

27, 2017, while incarcerated at the Lake County Jail, Hullinger was assaulted by two

other inmates.  [Compl., DE 2 at 2.]  As a result of the attack, Hullinger fractured three

bones in his eye and his jaw bone.  [*Id.*]  Hullinger requested medical treatment and

approximately four hours after his initial request, he was taken to a nearby hospital.

[*Id.*]  Due to the swelling, no diagnostic testing could be performed.  [*Id.* at 7.]

Approximately two days later, Hullinger returned to the hospital and was diagnosed

with a fractured orbital bone. [*Id.*]  The treating physician told Hullinger that he must

have eye surgery within the next 7 days to prevent permanent damage to his eye.  [*Id.* at

2

2, 7.] Hullinger was scheduled for surgery, but the jail did not transport him to the hospital. [*Id.*] After his surgery date had passed, Hullinger was transported to see the surgeon who rescheduled the surgery. [*Id.* at 7.] Although the defendants were aware of the rescheduled surgery date, for reasons that are unclear, Hullinger was not taken to surgery on the new date. [*Id.*]

On or about June 5, 2017, Hullinger was in the booking area to be transported for "a medical appointment" when he was allegedly assaulted by Officer J. Cockrell.[1] [*Id.* at 2, 7.] Officer Cockrell placed Hullinger in hand restraints, twisted his arms and struck him in the eye, causing more injuries to Hullinger's eye. [*Id.*] Hullinger was transported to the hospital, but could not have the surgery because his eye was leaking from the assault. [*Id.*] Hullinger never received any additional medical treatment, despite his many requests. [*Id.*] Although this was not alleged in the complaint, Hullinger states in his memoranda that he was released from the Lake County Jail on or around June 27, 2017, and this date is not controverted. [DE 24 at 2.]

Hullinger alleges that Davies (the Jail Administrator) and the unknown officers of Lake County Jail "intentionally and deliberately failed to transport Mr. Hullinger to the hospital to receive surgery," and they engaged in a "pattern and practice of failing and/or refusing to provide adequate and necessary medical treatment to inmates," which caused him physical and emotional injury, including significant and permanent

---

[1]Officer Cockrell was originally a named defendant in this case. But Hullinger filed a stipulation of dismissal without prejudice, and I granted it, dismissing all counts against Officer Cockrell without prejudice. [DE 31, 32.]

scarring.  [DE 2 at 9-10.]  He alleges that Dr. Forgey, the Jail's medical director, failed to

"adequately treat inmates who require extensive and/or expensive medical care" and

failed to provide adequate training and supervision to the personnel.  [*Id.* at 9-10.]

Because this is a lengthy complaint with a number of defendants, let's zero in on

the counts against each of the three defendants who have filed motions to dismiss.  As

to both Davies (who was sued individually and in his official capacity as Jail

Administrator of the Lake County Jail) and the Unknown Officers of Lake County Jail[2],

the complaint asserts the same three counts.  The first two fall under section 1983,

alleging Hullinger suffered an objectively serious medical condition to which Davies

and the unknown officers were deliberately indifferent and this violated his Eighth

Amendment rights (Count I) and Fourteenth Amendment rights (Count II).

Counts I and II cover the same grounds.  If, on the one hand, Hullinger was a

pretrial detainee at the time of the incident in question, then the Fourteenth

Amendment claim in Count II makes sense.  If, however, Hullinger was serving a

sentence at the Lake County Jail, then his claim can only be brought under the Eighth

Amendment.  *See Armstrong v. Squadrito*, 152 F.3d 564, 570 (7th Cir. 1998) (stating Eighth

Amendment claim "applies only to a convicted prisoner rather than a pretrial detainee

whose rights receive the protection of due process.").  Since this distinction between the

---

[2] A plaintiff bringing a Section 1983 claim is required to "specify whether suit is brought against the defendant in his official capacity or in his individual capacity." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991).  Hullinger fails to specify the capacity in which the Unknown Officers of Lake County Jail are being sued.  This will be discussed more later in this opinion.

Eighth and Fourteenth Amendments was not raised by the parties in their briefing I will ignore the issue for now but the matter will need to be clarified as this case works towards the summary judgment phase of litigation.

In addition to the federal claims, Hullinger also alleges a state law negligence claim against Davies and the unknown officers, claiming they had a statutory duty to take care of Hullinger, but failed to do so by providing adequate medical treatment (Count IV).

As to Dr. Forgey, Hullinger sued him individually and as Medical Director of the Lake County Jail.  Dr. Forgey was also named in Counts I and II of the complaint (for civil rights violations arising under the Eighth and Fourteenth Amendments).  Count III alleges another section 1983 claim against Dr. Forgey for maintaining inadequate customs and policies for inmates who required extensive medical care and improperly investigating the background of administrators and medical service providers.  Count VI alleges a state law negligence claim against Dr. Forgey for failing to provide medical treatment in a reasonable manner.

The three defendants who brought these motions to dismiss argue a few different theories.  But all three defendants – Davies, the Unknown Officers of Lake County Jail, and Dr. Forgey — all assert that Hullinger has failed to comply with the applicable statute of limitations.  I'll start with that common issue and then turn to the remaining claims.

## Discussion

I.      **Timeliness of the 1983 Claims**

A plaintiff is not required to plead facts that overcome affirmative defenses

based on the statute of limitations. *NewSpinSports, LLC v. Arrow Elecs., Inc.*, 910 F.3d

293, 299 (7th Cir. 2018).  Dismissing a complaint as untimely based on the pleadings is

disfavored, because a statute of limitations defense largely turns on facts that aren't

even before the court at this stage in the litigation. *See Sidney Hillman Health Ctr. of*

*Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015); *see also United States v.*

*Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (dismissal under Rule 12(b)(6) on the

basis of the statute of limitations is "irregular," since it is an affirmative defense for

which the defendant bears the burden of proof).

Yet a plaintiff can plead himself out of court by alleging facts that make it plain

that "relief is barred by the applicable statute of limitations . . ." *Logan v. Wilkins*, 644

F.3d 577, 582 (7th Cir. 2011).  "A complaint is subject to dismissal for failure to state a

claim if the allegations, taken as true, show the plaintiff is not entitled to relief.  If the

allegations, for example, show that relief is barred by the applicable statute of

limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v.*

*Bock*, 549 U.S. 199, 215 (2007).  The Seventh Circuit has stated that a court may properly

rule on an affirmative defense where the complaint "pleads too much and admits

definitively that the applicable limitations period has expired." *Barry Aviation Inc. v.*

*Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).

All parties agree on a number of things in this case.  First, they agree that the statute of limitations for suits under section 1983 is governed by state law.  *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012).  They also agree that the applicable statute of limitations is two years.  *Id.*; Ind. Code § 34-11-2-4 (providing the statute of limitations for personal injury).  Finally, they agree that federal law establishes when the cause of action accrues.  *See Behavioral Inst. of Ind. v. Hobart Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) ("While state law determines the length of the limitations period, federal law determines the date of accrual of the cause of action.").  But this is where the agreements end.

The parties dispute how the accrual rules play out in Hullinger's case.  Hullinger argues that the date of accrual for claims for refusal to treat a medical condition is the date the plaintiff was released from jail.   In other words, because he was continually harmed by the Defendants' inaction until he was released from jail on June 27, 2017, that is the point in time when his claim accrued. And because the complaint was filed on June 13, 2019, it was timely.  Defendants assert, on the other hand, that the claim accrues when the person knows of his injury and its cause.  They argue that Hullinger learned of his injury on April 27, 2017, or April 29, 2017 (when the hospital diagnosed him with a fracture orbital bone), or even at the very latest on June 5, 2017 (when the alleged altercation occurred with Officer Cockrell and Hullinger could not get his medical treatment).  In looking at any of these dates of accrual, the argument goes, when Hullinger filed his complaint on June 13, 2019, it was after the 2-year statute of

limitations had run.

The case law is on Hullinger's side.  When a prisoner claims deliberate indifference to a serious medical condition, the claim accrues when the prisoner is released from custody.  So holds *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). *Heard* has a remarkably similar set of facts.  In that case, the plaintiff was in the Cook County jail awaiting trial, when he developed a bulge that he suspected was a hernia. (*Id.* at 317.)  He was in significant pain.  After months of unsuccessfully requesting medical care, he was finally examined and a doctor diagnosed a ruptured hernia and recommended surgery.  *Id.*  But the jail refused to act on the doctor's recommendation. *Id.*  The district court ruled the statute of limitations began to run when the plaintiff discovered he had a medical problem that required attention, which was more than two years before the suit was filed.  *Id.*  But the Seventh Circuit disagreed noting that, while the date of accrual for medical malpractice would be when the plaintiff discovered he had a medical problem, Eighth Amendment cases are different. Here's why:

> [M]alpractice does not violate the Eighth Amendment; instead the suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition.  This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew.  A series of wrongful acts creates a series of claims. . . .  The injuries about which the plaintiff is complaining in this case are the consequence of a numerous and continuous series of events. . . . in this case every day that the defendants ignored the plaintiff's request for treatment increased his pain.  Not only would it be unreasonable to require him, as a condition of preserving his right to have a full two years

> to sue in respect of the lst day on which his request was ignored, to
> bring separate suits two years after each of the earlier days of
> deliberate indifference; but it would impose an unreasonable
> burden on the courts to entertain an indefinite number of suits and
> apportion damages among them.

(*Id.* at 318, 319-20 (internal citations omitted)).  In recognizing the continuing wrong in

*Heard*, the court reversed and remanded the district court's holding that the suit was

barred by the statute of limitations.  (*Id.* at 320.)

This case seems entirely on point to me.  Like the plaintiff in *Heard*, Hullinger

was supposed to receive medical care and have eye surgery, but was repeatedly denied

that opportunity through alleged deliberate indifference.  All three Defendants argue

that *Heard* is inapplicable "because Plaintiff, through his own admission, was provided

with medical care" thus he suffered a distinct injury and his cannot be deemed

continuing.  [DE 27 at 2; DE 28 at 2.]  They believe that because Hullinger conceded that

he was provided *some* hospital care on April 27, 2017, and his surgery was scheduled,

and then rescheduled by a surgeon, this distinguishes *Heard*, where the plaintiff got *no*

medical treatment.  The distinction eludes me. The plaintiff in *Heard* was taken to the

doctor finally, who recommended surgery (like in this case), but Heard never received

the surgery (like here).  I really don't see an appreciable difference between the two

cases.

Defendants argue that Hullinger alleged at least two separate events resulting in

discrete injuries: (1) the alleged failure to provide for his April 27, 2017 injuries within

seven days of the hospital visit on April 29, 2017; and (2) Officer Cockrell's alleged

9

striking of him, causing additional injury on June 5, 2017, which prevented surgery

from occurring; and therefore, he did not have a continuing injury like that in *Heard*.

But I think it's a much fairer reading of the complaint to say that Hullinger was facing a

continuing harm.  It's certainly true that Hullinger received an injury when Hullinger

was diagnosed with the fracture of his orbital bone; when he was not transported to the

first scheduled surgery; and when Officer Cockrell hit him in the eye and he could not

undergo the rescheduled surgery.  But it is also true to say that Hullinger continued to

suffer harm from the Defendants' alleged deliberate indifference every day thereafter

when he never received the surgery.

Indeed, the complaint alleges that Hullinger suffered "immense pain and

permanent injury." [DE 2 at 8.]  I don't think it is fair to say these injuries stopped when

Hullinger was not taken to his surgery within the prescribed 7-days, or they were

complete after his assault when he was unable to get the second scheduled surgery.

Although Defendants argue the statute of limitations should start running when

Hullinger knew of his injury, and his harm/injury was complete when Hullinger did

not get surgery within the prescribed 7 days, his injury did not stop at that point.  Every

day Hullinger was denied the surgery constituted a continuous wrong and deliberate

indifference.  Which is why this case is like *Heard* - Hullinger's injury continued every

day he was denied surgery, up until his release.  The topper is the Seventh Circuit's

recognition that "even if [the prisoner's] condition did not worsen from the delay [in

treatment], deliberate indifference to prolonged, unnecessary pain can itself be the basis

for an Eighth Amendment claim." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th

Cir. 2012).

Dr. Forgey's efforts to distinguish *Heard* are equally unavailing. Dr. Forgey says

that defendants' refusal in *Heard* to treat the plaintiff's hernia continued for as long as

the defendants had the power to do something about his condition and "[t]here were no

allegations of any other event outside the jail's power." [DE 29 at 4.] In this case, he

claims, there were events beyond Dr. Forgey's power to treat his condition: Hullinger

was taken to the hospital originally but swelling prevented diagnostic testing, the

surgeon rescheduled the surgery, and then when Hullinger was waiting to be

transported for a medical appointment he was struck by Officer Cockrell and he could

not undergo the surgery. [DE 29 at 4-5.] I suppose Dr. Forgey simply wants me to take

his word for it that there was no possible way for him to transport Hullinger at any time

after he received the injury to his eye, and before his release from jail 2 months later.

That I cannot do at this phase of the litigation. Summary judgment is a better time to

address these factual arguments.

It is not just the *Heard* case that supports Hullinger's arguments. There are other

cases in this circuit that are on point as well. For example, in *Wilson v. Wexford Health*

*Sources, Inc.*, 932 F.3d 513, 517-18 (7th Cir. 2019), the Seventh Circuit explained that it

recognized in *Heard*:

> that a section 1983 Eighth Amendment claim based on deliberate
> indifference in the delivery of medical care does not necessarily
> allege a single event or a series of events, but may describe an
> ongoing denial of care. In such cases, we have a continuing

> violation for accrual purposes. The alleged wrong - the refusal to
> provide medical care - continued for as long as the defendants had
> the power to do something about [the plaintiff's] condition.

And in *Dukes v. Cook Cnty. Sheriff's Office*, No. 17-cv-7095, 2021 WL 860357, at *7

(N.D. Ill. Mar. 8, 2021), the court denied a motion to dismiss a deliberate indifference to

medical needs claim, citing with approval *Wilson* and *Heard*. *See also Parisi v. Wexford*

*Health Sources, Inc.*, No. 17 C 444, 2020 WL 247394, at *4 (N.D. Ill. Jan. 16, 2020) (denying

motion dismiss, stating "[a] section 1983 claim that, as here, alleges an ongoing denial of

medical care is a continuing violation for accrual purposes.").

The Defendants point to *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013), in

support of their argument that Hullinger's claim should accrue when he knew of his

physical injury and its cause (and they argue this was either when Hullinger learned he

needed surgery or, at the latest, when he was assaulted waiting for medical transport).

In *Devbrow*, an inmate alleged that prison doctors delayed treating his prostrate cancer

because they did not order a biopsy until after the cancer had metastasized. 705 F.3d at

766. The Seventh Circuit concluded his claim could not have accrued until he received

his cancer diagnosis because he could not have known of the injury any earlier. *Id.* at

770. Nothing in *Devbrow* forecloses the result in this case, as the Seventh Circuit has

clearly stated in other cases that continuing refusals to treat a prisoner's condition can

delay the start of the limitations clock.

Because Hullinger's claims under section 1983 are based on deliberate

indifference for ongoing denial of care, these claims did not accrue until he left the jail

on June 27, 2017.  His complaint filed on June 13, 2019, was timely filed within the 2-year statute of limitations.  Therefore, dismissal of the section 1983 claims on the basis of timeliness is not warranted.

**II.      Adequacy of the Section 1983 Claims Against Dr. Forgey in Counts I, II and III**

As already mentioned, Counts I and II allege 1983 claims against Dr. Forgey for deliberate indifference to a serious medical need, alleging the medical needs of Hullinger were brought to Dr. Forgey's attention, he deliberately failed to transport Hullinger to the hospital to receive surgery, and Dr. Forgey knew of Hullinger's substantial injuries. [DE 2 at 4, 7-8.]

Dr. Forgey claims that these formulaic recitations do not satisfy the pleading requirements of *Twombly* and *Iqbal*, and Hullinger has not stated a plausible claim for relief against Dr. Forgey.  [DE 21 at 7-8.]  In response, Hullinger argues he has alleged "that Dr. Forgey was aware of his objectively reasonable serious medical condition and was deliberately indifferent to his condition.  Plaintiff further provides a timeline from the onset of his serious medical condition to when he was released from the Lake County Jail." [DE 26 at 3-4.]

Frankly, the allegations in Hullinger's complaint against Dr. Forgey are fairly skimpy.  However, it does state that Dr. Forgey himself knew about Hullinger's condition and the denial of medical care, he failed to transport him to surgery, and that Dr. Forgey inadequately supervised and trained staff.  Liability under section 1983 is based on personal responsibility.  There is no vicarious liability under section 1983.

13

Though it is close, these allegations are sufficient to put Dr. Forgey on notice of what he is alleged to have done.  Nothing more is needed.  Counts I and II will go forward against Dr. Forgey in his individual capacity.

As for Count III, it alleges what sounds like an official capacity *Monell* claim against Dr. Forgey.  *See Monell v. Dep't of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 690-91 (1978).  Specifically, Count III alleges that Forgey had the policy, practice and/or custom to adequately treat inmates who required extensive and/or expensive medical care; he inadequately and improperly investigated the background of administrators and medical service providers; he retained these providers who deprived inmates of their rights; it was the policy of Dr. Forgey to inadequately and improperly investigate complaints regarding inadequate medical care; and he did not provide proper training to prevent constitutional violations.  [*Id.* at 12-13.]  This is the language of an official capacity claim. But because Hullinger also named the Lake County Sheriff's Department, Dr. Forgey argues these claims against him in his official capacity are redundant. [DE 21 at 9-10.]  Hullinger agrees. [DE 26 at 4.]  So Count III against Dr. Forgey in his official capacity (as well as his individual capacity) will be dismissed.[3]

---

[3] To the extent the complaint attempts to state a *Monell* claim against Dr. Forgey in his individual capacity, this is not permitted.  *See Johnson v. Dykstra*, No. 3:17-cv-00071-PPS-MGG, 2019 WL 2270356, at *3 (N.D. Ind. May 24, 2019) ("[plaintiff] has also brought *Monell* claims against Neal and Payne in their individual capacity.  But this is an oxymoron.  A party simply may not assert a *Monell* claim against prison officers in their individual capacities.  Recall that under section 1983, only municipalities may be held liable for constitutional violations caused by their official policy including unwritten customs.").

III.     **Timeliness of the State Law Negligence Claims (Count IV and VI)**

In addition to the section 1983 federal claims, Hullinger also alleges a state law

negligence claim against Davies and the unknown officers, claiming they had a

statutory duty to take care of Hullinger, but failed to do so by providing adequate

medical treatment (Count IV).  Defendant Davies argues this negligence claim is also

foreclosed by the applicable statute of limitations.  Count VI alleges a state law

negligence claim against Dr. Forgey.  Dr. Forgey also requests dismissal on the basis of

timeliness. [DE 21 at 2 n. 1.]

The statute of limitations governing negligence claims involving personal injury

is also two years.  Indiana Code § 34-11-2-4.  However, like the section 1983 claims, the

negligence claims also accrue later due to a continuing wrong doctrine.  In Indiana:

> The doctrine of continuing wrong applies where an entire course of
> conduct combines to produce an injury.  When the doctrine
> attaches, the statute of limitations begins to run at the end of the
> continuing wrongful act.  In order to apply the doctrine, the
> plaintiff must demonstrate that the alleged injury-producing
> conduct was of a continuous nature.  The continuing wrong
> doctrine is not an equitable doctrine but rather defines when an act
> took place.

*Yoost v. Zalcberg*, 925 N.E.2d 763, 771 (Ind. Ct. App. 2010).  This state law is in lockstep

with my ruling on the federal claims.  The negligence is also alleged to have continued

the entire time Hullinger did not receive the surgery, until he was released.  Therefore,

these claims were also timely filed.

IV.     **Claims Against Davies That Hullinger Concedes Should Be Dismissed**

Davies moves to dismiss all of the official capacity claims against him, claiming

they are redundant and duplicative since Hullinger has also named the Lake County

Sheriff's Department as a defendant. [DE 7 at 7.] Plaintiff concedes that the official

capacity claims against Davies should be dismissed. [DE 24 at 3.]

Davies also moves to dismiss the claims against him in his individual capacity in

Count IV because Hullinger failed to comply with the Indiana Torts Claims Act. [DE 7

at 8-9.] Again, Hullinger concedes that these claims should be dismissed. [DE 24 at 3.]

## V.      Claims Against The Unknown Officers of Lake County Jail

The next issue is what to make of the claims against the unknown officers of Lake

County Jail. The law in the Seventh Circuit is clear that claims against "unknown

officers" is not appropriate and serves no purpose. *See Wudtke v. Davel*, 128 F.3d 1057,

1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal

court; this type of placeholder does not open the door to relation back under Fed. R.

Civ. P. 15, nor can it otherwise help the plaintiff."). As this case goes forward to

discovery and individuals get identified, Hullinger may move to amend the complaint

to name the new party. But to name them now as "unknown officers" serves no useful

purpose. *See, e.g., Rodriguez v. ATF UC 3749*, No. 3:18-cv-899-JD-MGG, 2020 WL 363911,

at *2 (N.D. Ind. Jan. 22, 2020) ("as a practical matter, [plaintiff] cannot proceed against

these unnamed defendants. Furthermore . . . [plaintiff] has not described what these

defendants did or the actions they took that he considers to be unconstitutional.

Therefore, he cannot proceed against these defendants."). So the claims against the

unknown officers will be dismissed, and leave may be granted to file an amended

complaint when and if they are identified through discovery.

## Conclusion

Defendant Unknown Officers of Lake County Jail's Motion to Dismiss [DE 13] is GRANTED and all claims against the Unknown Officers of Lake County Jail are DISMISSED.

The motions to dismiss of Defendant Edward Davies [DE 6]; and Defendant Dr. William Forgey [DE 20] are GRANTED IN PART and DENIED IN PART.

Defendant Davies' Motion to Dismiss [DE 6] is GRANTED as to all official capacity claims against Davies and as to the individual capacity claim against Davies in Count IV and the Clerk is ORDERED to DISMISS these claims WITH PREJUDICE. The rest of Davies' Motion to Dismiss [DE 6] is DENIED: Counts I and II remain pending against Davies in his individual capacity.

Defendant Dr. Forgey's Motion to Dismiss [DE 20] is GRANTED as to all official capacity claims against Dr. Forgey and the Clerk is ORDERED to DISMISS these claims WITH PREJUDICE. The rest of Dr. Forgey's Motion to Dismiss is DENIED: Counts I, II, and VI remain pending against Dr. Forgey in his individual capacity.

ENTERED: April 5, 2021.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT